(154 App. Div. 203.)

### PEOPLE v. SCHNEIDER.

(Supreme Court, Appellate Division, Second Department.   December 30, 1912.)

1. CRIMINAL LAW (§ 1170½*)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.
   Where defendant's counsel was allowed to interrupt the direct examination of a witness by the district attorney, and ask questions of the witness to show that statements of defendant to such witness were the result of unlawful pressure, the sustaining of objections to certain further questions, the court stating that such questions could be asked on cross-examination, was not error.

   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3129–3135; Dec. Dig. § 1170½.*]

2. CRIMINAL LAW (§ 406*)—ADMISSIONS TO FIRE MARSHAL.
   Statements by one charged with arson, voluntarily made to a fire marshal with knowledge that he was such officer, were admissible in evidence; Greater New York Charter (Laws 1901, c. 466) § 779, restricting the use of testimony elicited in a formal examination by a fire marshal, not referring to a conversation with one charged with arson and not under oath.

   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 785, 894–917, 920–927; Dec. Dig.' § 406.*]

3. WITNESSES (§ 387*)—IMPEACHMENT—CROSS-EXAMINATION—DISCRETION OF COURT.
   Questions, asked a police officer, as to whether he had testified to certain things before the magistrate that he testified to on the trial, are properly excluded, in the discretion of the court, on cross-examination; it not being the rule that all details of the evidence must be given before the magistrate to entitle them to weight on the trial.

   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1228–1232; Dec. Dig. § 387.*]

4. ARSON (§ 28*)—TRIAL—EVIDENCE.
   In a prosecution for arson, it was not error to introduce in evidence books and papers showing business relations between the defendant and the record owner of the premises burned.

   [Ed. Note.—For other cases, see Arson, Cent. Dig. §§ 56–61, 63; Dec. Dig. § 28.*]

5. WITNESSES (§ 367*)—IMPEACHMENT—BIAS—EVIDENCE.
   The exclusion of questions in an arson case as to whether the witness, a fire marshal, had personally investigated the case, and looked up witnesses for the case, such being an incidental part of his official duties, was proper, since a witness is not necessarily an interested witness because he testifies in support of prosecutions based upon his investigations.

   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1184, 1185; Dec. Dig. § 367.*]

6. CRIMINAL LAW (§ 874*)—POLLING JURY—"PARTY."
   Under Code Cr. Proc. § 450, providing that the jury may be polled when required by either party, it was not error to discharge a jury without polling it, where the defendant was present and did not require it, although defendant's attorney was not there; no reason being shown why he was not present, and the defendant being a "party," within Code Cr. Proc. § 6, defining who are parties in criminal actions.

   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2085–2088; Dec. Dig. § 874.*

   For other definitions, see Words and Phrases, vol. 6, pp. 5203–5213; vol. 8, p. 7747.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. CRIMINAL LAW (§ 1186*)—APPEAL—FAIR TRIAL—AFFIRMANCE.

Where there is nothing to show that defendant did not have a fair and impartial trial, a judgment of conviction will be affirmed, under Code Cr. Proc. § 542, providing that judgment should be given after hearing an appeal, without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3215–3219; Dec. Dig. § 1186.*]

Appeal from Trial Term, Kings County.

Barauch Schneider was convicted of arson, and he appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Frederick N. Van Zandt, of New York City, for appellant.

Edward A. Freshman, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., and Hersey Egginton, Asst. Dist. Atty., both of Brooklyn, on the brief), for the People.

WOODWARD, J. The defendant was charged with the crime of arson in the first degree, was tried before the County Court of Kings County, and found guilty as charged, and sentenced to 15 to 30 years in Sing Sing prison. On the 12th day of June, on the day on which the judgment was entered, a certificate of reasonable doubt was granted by the county judge, and bail was fixed at $15,000. This certificate of reasonable doubt was based upon two rulings of the court. The first of these was a ruling upon the admissibility of testimony on the part of a fire marshal, who had a conversation with the defendant, after he was arrested and while he was in jail; the objection being that under the provisions of section 779 of the Greater New York Charter (Laws 1901, c. 466) testimony or evidence taken by the fire marshal in the discharge of his duties is not to be used in any criminal proceeding. The second ruling was that of the court in refusing to continue a preliminary questioning of the said fire marshal in relation to the circumstances under which the conversation was held, the defendant's counsel urging that he was then prepared to show the testimony inadmissible as against the defendant; and as this latter is now insisted upon as constituting "the most prejudicial and gravest error committed by the trial court," we will dispose of that now.

The evidence shows without contradiction that the defendant was arrested at 2:45 a. m., on the 19th day of September, 1910, by Police Officer Reich, who heard an explosion at 677–A Sixth avenue, Brooklyn, and who immediately thereafter saw two men coming from the premises; the defendant running directly into his arms, apparently without seeing the officer, owing to the fact that he had one of his hands over his eyes. Questioned by the officer where he lived, defendant gave his residence as 135th street, Manhattan, and said that he had just come from Coney Island, and that he was going up to Twentieth street to take a Sixth avenue car. Defendant said he did not know the owner of the building from which he had just emerged,

and gave as his reason for being at this point that he had been to Coney Island, and had fallen asleep in the elevated train, and, not wanting to oversleep, had come to Sixth avenue to take a car. It subsequently developed from the evidence that the defendant had himself been the owner of the premises, that they had been transferred back and forth between the defendant and one Diamond several times, and at the time of the explosion that the title to the premises stood in the name of Diamond, who was shown to be associated with the defendant in a saloon in Manhattan and in other business matters, and that Diamond had the property insured. The officer took the defendant to the premises where the explosion occurred, and found the cellar filled with flames, and there was much testimony in relation to the conditions found about the premises, the fact of the explosion, and the necessary facts to constitute the crime charged, and, upon the merits, there does not appear to be any question that the verdict is supported by the weight of evidence.

[1, 2] One William R. Ferris, a deputy fire marshal, was called as a witness on behalf of the people, and testified that he reached the scene of the fire in the discharge of his duty of investigating its origin, etc., at about 4 o'clock in the morning of the fire; that he went over the premises, ascertaining the facts necessary for his purposes, and that at about half past 4 o'clock he visited the defendant at the station house at Fifth avenue and Sixteenth street and had a conversation with him. At this point counsel for defendant interposed an objection that it was incompetent. This objection was overruled. Defendant's counsel then said:

"I desire at this time to ask this witness one or two questions first, before your honor ultimately rules on that objection."

No objection appears to have been interposed, and defendant's counsel was permitted to bring out the following from this witness:

"I say that I am a duly appointed assistant fire marshal of the city of New York, and went to the station house where the defendant was after he had been arrested in connection with the fire; but what the charge was against him I don't know. I made the charge of arson the following morning. I knew when I went to see him that he had been arrested on account of his supposed connection with this fire. I saw him in the captain's room. I told him I was an assistant fire marshal. At that time I had a book with me containing extracts from the charter. I don't recollect taking the book out, but I remember telling him about my authority, and I explained who I was. I know I had the book with me. I think I quoted him from memory sections 779, 780, 781. Section 779 is a solid two pages of finely printed matter almost. I did not say I quoted the whole section. I quoted some portions of it. I think I quoted sections 780, 781, tracing the cause of fires. I don't remember the exact words; but I remember quoting the number of section 779, and I remember my telling him my authority to examine."

The witness was then asked:

"And do you remember quoting that portion of it where you showed you had authority to subpœna witnesses, and compel the attendance of any person or persons, the production of books and papers, and any inquiries that you made of witnesses, and any false swearing on their part, constituted perjury?"

To this he replied:

"No; not the false swearing."

Again he was asked:

"What did you say relative to any false statement?"

He answered:

"I said nothing to him about false swearing. I simply pointed out my authority to examine witnesses, and investigate the causes of fires, and the like."

The book was here marked in evidence, and the witness continued:

"Before I asked him any questions, I told him that I was the assistant fire marshal, that I had come there to investigate the fire, and I told him that anything he said to me might be used against him in court. That is all I said to him on the subject of his rights. There is no doubt about that."

Obviously, as a matter of law, up to this time the defendant's counsel had succeeded only in establishing facts showing the testimony competent. The witness had fully stated to him his official position, his duty in the premises, and had warned him that whatever was said was likely to be used against him. Under such circumstances the courts have held, even where the statement was made in an investigation of the coroner, after the arrest was made, that the statements of the prisoner were competent evidence against him upon the trial (People v. Kennedy, 159 N. Y. 346, 358, 54 N. E. 51, 70 Am. St. Rep. 557, citing People v. Chapleau, 121 N. Y. 266, 24 N. E. 469), and it was the duty of the court to determine, as matter of law, that the testimony offered was admissible (People v. Meyer, 162 N. Y. 357, 368, 56 N. E. 758).

We will now seek to discover wherein the alleged error lies in the court refusing to permit further preliminary examination of this witness. Defendant's counsel proceeded:

"Now, then, do you remember saying to him first, in substance: 'I am a fire marshal from the city of New York, and it is my duty to investigate fires, and I am here to see what I can do to help you.' Did you say anything like that to him?"

The witness answered:

"I did not testify that I said that. You asked me what I said to him, and I will state it."

Counsel said:

"I am asking you, did you say anything like that?"

This was objected to. The court responded:

"I will permit that question, of course, in the regular course of cross-examination. This is a preliminary examination interrupting the regular course of the district attorney's examination on the direct. Now, you are bringing in some of the main case. You are asking him if he said certain things, or if he did not say certain things, and I think, as a preliminary proposition, the examination should be about terminated."

Some discussion occurred between counsel for defendant and the court, in the course of which defendant's counsel declared that:

"I offer at this time to show first, by cross-examination, that this conversation that he had with the defendant, or any admission or alleged confession contained in it, was not legally obtained; that it was obtained contrary to law, and I offer to show that now, by the cross-examination of this witness, and by the production of witnesses in behalf of the defendant at this time on that particular question."

To this the court responded:

"Of course, I frankly state to counsel that, if he can substantiate that statement of his by proper proof, there is no question but what that should be submitted then to the jury; but I claim that at this time the regular orderly examination of this witness by the district attorney on the direct should not be further interrupted any more than I have already permitted it to be, * * * and upon the cross-examination of this witness you will have full opportunity to bring out the matters that you desire."

After some further discussion with the court, in which defendant's counsel was reassured of his right to bring out the matters desired on the regular cross-examination, defendant's counsel gave notice that he desired now "and at no other time to offer such proof," and took an exception to the ruling of the court. On the direct examination being continued, the witness said:

"I told the defendant that I was an assistant fire marshal, that I had come there for the purpose of investigating the fire, and that I was going to ask some questions; and I told him that anything he might say may be used against him in court, and he said, 'I am willing to make a voluntary statement,' he said, 'as I am an innocent man.'"

This statement of the witness is nowhere contradicted. The defendant made no effort whatever to show that he was deprived of any of his legal rights, and the further matters brought out on the examination of this witness were such as the defendant saw fit to make in explanation of his being at the point of the fire at 2:45 o'clock in the morning, his business connections, etc., at no time confessing to the crime, or making any admissions which in and of themselves, aside from their relation to other matters brought out in the evidence, would tend to prejudice him before the jury. Where, then, is the error? The witness had answered that he did not testify to having used the language which counsel suggested in his question, and the objection was interposed to the question of counsel:

"I am asking you, did you say anything like that?"

This was merely a repetition of the former question, which had been answered, and on the direct examination, which followed this interruption, the witness went on and stated what he had, in fact, said, and there is no dispute upon this point. Defendant's counsel did not call a witness, or attempt to call a witness, to establish his assertion that the conversation was the result of unlawful pressure upon the defendant, and, although assured that he would be permitted to do so at a proper time, he refused to make the offer at any other time than in the midst of the district attorney's direct examination. So far as the record discloses, the defendant was told what his rights were, that his conversa-

tion might be used against him in court, and he stated that he was willing to make a voluntary statement, as he was an innocent man; and all that he told to the witness was upon the defendant's theory that he was exculpating himself, for he all the time insisted that he was not involved in the creating of the fire.    With this testimony in the case, the testimony was clearly admissible as a matter of law, and if the defendant had any evidence bringing in question the truth of the statement of the witness as to what occurred preliminarily to the conversation which was detailed, it was his duty to offer it, not in the midst of the direct examination, but in the course of the cross-examination of the witness, or upon the defendant's own case.

In People v. Cassidy, 133 N. Y. 612, 30 N. E. 1003, confessions by the defendant were made, while he was under arrest, to Inspector Byrnes of the New York police force.    The inspector and others present testified that the confession was voluntary.    The defendant testified that they were made under the influence of fear, produced by threats.    The question of whether they were voluntary and reliable was submitted to the jury by the court, which found against the defendant, and it was held that they were properly in the case and sufficient to justify the verdict.    See People v. Kennedy, 159 N. Y. 346, 356, 359, 54 N. E. 51, 70 Am. St. Rep. 557, inclusive, and authorities cited.    We think the defendant was deprived of no right by the ruling of the court, and that the conviction should not be disturbed upon this account.    See People v. Meyer, 162 N. Y. 357, 366, 367, 56 N. E. 758, and authorities there cited.

We are equally clear that the restrictions contained in section 779 of the Greater New York Charter have nothing to do with this case. The restrictions against using the testimony elicited in a formal examination of a witness in connection with a fire does not in any manner limit the fire marshal in testifying to a conversation held by him with a person who is merely in custody in connection with such fire, where the prisoner is not under oath, and his whole conversation is brought out in his own behalf.    The intent of the statute was to enable the fire marshal to conduct an investigation under oath, and to get at all the facts, and to accomplish this it was thought proper to protect the witnesses against their testimony being used against them in criminal proceedings; but it has no relation to a voluntary declaration made by a party who is in custody on suspicion of having committed a crime.

[3] Having disposed of the most serious objections, it is necessary to inquire if any of the lesser objections have weight.    Great stress is laid upon the fact that the police officer who arrested the defendant testified that he smelled gasoline upon the prisoner's clothes at the time of the arrest, and an attempt was made to show that the witness had not so testified before the committing magistrate; but the record shows that just prior to the questions where the objection was raised the witness had testified that he smelled gasoline when he searched the prisoner, and that he did not testify to that before the magistrate; "I did not get a chance, I don't think."    Clearly it is not the rule that all the details of the evidence shall be given before the magistrate, in order to entitle them to weight upon the trial, and the ruling of the court, ex-

cluding a question, "Now, then, as a police officer, you knew that the odor of gasoline upon his clothes was an important fact, didn't you?" and another, "Did you testify before the magistrate, or before any other court, or in any other place except this court this morning, that you smelled the odor of gasoline upon his clothes?" were properly excluded in the discretion of the court on cross-examination.

[4] Next, defendant's counsel finds fault with matters which he brought out on cross-examination of the people's witness Ferris, the fire marshal, and then urges an ojection to the admission in evidence of certain books and papers which were found by the witness in the premises which the defendant said he owned, and which showed business relations between the defendant and Diamond, the record owner of the premises where the fire occurred. We do not find the error.

[5] Next, there is complaint at the ruling of the court in refusing to permit answer to the question:

"Now, from the beginning of your investigation of this alleged fire to-day, have you had charge of the preparation of the case for trial?"

Suppose he had answered, "Yes." Would that have shown bias or prejudice on the part of the witness? It was a part of his duties as a public officer to investigate "any supposed cases of arson or incendiarism" (section 779, Greater New York Charter), and if he had been preparing the case he would simply have been discharging an incidental part of his official duties, and it is well understood that a witness is not to be understood as an interested witness because he testifies in support of the prosecutions based upon his investigations, as has recently been held under the Liquor Tax Law. Equally applicable is this comment to the next question:

"Did you go, after this fire and endeavor to ascertain the names and addresses of witnesses whose testimony would tend to substantiate the charge that had been made against the defendant in that case?"

In short, all three of the questions which were excluded were of the same general nature, and, even if it be admitted that it would have been entirely proper to permit them to be answered, we are unwilling to hold in this case that the ruling of the court to the contrary would justify a reversal.

[6] Then we are asked to hold that it was error to permit the jury to be discharged upon rendering their verdict without polling the jury. Section 450 of the Code of Criminal Procedure provides that:

"When a verdict is rendered, and before it is recorded, the jury may be polled, on the requirement of either party."

There is no contention that the defendant was not present when the verdict was rendered, and there is no suggestion that he required the jury to be polled. The defendant is clearly a party (section 6, Code of Criminal Procedure), and if he was present and failed to require the polling of the jury, what right has he to complain? It was not the fault of the court that defendant's attorney was not on hand at the time; for he concedes that he was later than the time fixed for his appearance in court, and it appears from the record that there was

counsel in the case, and no reason is shown why he was not present to look after the interests of the defendant, if he had any.

[7] And so we might go on, following the objections raised to this judgment of conviction, and show that each one of them is without substantial foundation; but it hardly seems worth while to go further. It is sufficient to say that we have carefully examined the questions raised, and that there is nothing in the record to indicate that the defendant has not had a fair and impartial trial, and under the provisions of section 542 of the Code of Criminal Procedure, as well as under the general practice of this court, the judgment should be affirmed.

The judgment appealed from should be affirmed. All concur.