# SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

## November 15, 1918.

## THE PEOPLE v. JOSEPH KLEIN.
### (185 App. Div. 86.)

(1.) ARSON IN SECOND DEGREE—VERDICT AGAINST THE WEIGHT OF EVIDENCE.

A defendant convicted of the crime of arson in the second degree for the burning of a dwelling house was indicted jointly with the occupant and others. It appeared that the defendant was a prosperous business man living in the neighborhood, and for a considerable time before the fire had maintained intimate and illicit relations with the occupant of the burned dwelling. The prosecution contended that the defendant had suggested to the occupant the setting of the fire and had employed another to set it. The object of the fire was that the occupant might collect insurance money. The defendant denied that he suggested the setting of the fire or employed another to do so, and claimed that the motive of the occupant in accusing him was to earn her own immunity and also because of resentment at him for not coming to her defense. All the evidence of the prosecution directly connecting the defendant with the fire was given by the occupant of the dwelling. Other evidence for the People consisted of testimony by the sister of the occupant as to an alleged suggestion by the defendant of a fire at a prior place of residence by occupant, and testimony given by the city fire marshal of the proceedings at an official investigation held by him about a year after the fire.

*Held,* that the judgment of conviction was against the weight of the evidence, and should be reversed and a new trial ordered.

(2.) SAME—CORROBORATION OF ACCOMPLICES.

The occupant of the burned dwelling, who was a confessed accomplice, was sufficiently corroborated to satisfy the requirements of section 399 of the Code of Criminal Procedure.

(3.) SAME—ADMISSION OF EVIDENCE TAKEN UPON EXAMINATION BY FIRE MARSHAL IN VIOLATION OF SECTION 779 OF CHARTER OF NEW YORK CITY.

Under section 779 of the Charter of New York City, authorizing the fire marshal to hold an investigation and to that end to have subpœnas out of the Supreme Court, and also to administer oaths to witnesses, and

providing that "any testimony or evidence taken as aforesaid * * * shall in no manner be used in any criminal proceeding or action," it was prejudicial error to admit testimony of the marshal as to the greater part of accusations made against the defendant by the occupant of the dwelling and others at the marshal's official examination, although the witnesses were not sworn and were not subpœnaed to attend, but the persons suspected at least were brought to the examination practically under arrest, and such error was not cured by the attempted striking out.

(4.) SAME.

The provision of section 779 of the Charter giving the bar should be liberally construed.

(5.) SAME—ADMISSION OF STATEMENTS BY OTHERS IN PRESENCE OF DEFENDANT.

Even if the statements made at the examination by others in the presence of the defendant were competent evidence against him, so far as the bar of the statute is concerned, most of such statements, so far as they were substantially damaging to the defendant, were incompetent and immaterial and should have been excluded under the objection by defendant's counsel "as incompetent, immaterial and irrelevant; prohibited by statute."

(6.) SAME.

Statements by others in the presence of a defendant are competent evidence against him only when he admits their correctness, either expressly or by keeping silent, when the circumstances are such that if he had been innocent or the particular statements untrue, he would naturally have spoken up and denied.

(7.) SAME—DEFENDANT'S SILENCE CANNOT BE TAKEN AS A MATTER OF LAW AS A CONFESSION OF GUILT.

The court cannot as a matter of law instruct the jury that a defendant's silence or failure to deny statements by others in his presence is a confession of guilt.

(8.) SAME—CROSS-EXAMINATION.

Defendant's counsel upon cross-examination of a witness by requiring him to testify to defendant's denials of statements by others in his presence did not thereby open the door to a redirect examination of such witness, permitting him to repeat the gist of the accusations made in defendant's presence or waive his objection to that line of testimony which the trial court had assured him continued throughout the examination.

(9.) SAME.

After the district attorney upon the defendant's cross-examination had failed to obtain from him some admission of complicity in another fire

which occurred ten months after the fire in question, it was error to permit him in rebuttal, over defendant's objection and exception, to prove by a private detective that the defendant had made statments about said fire to him indicating a guilty knowledge of it.

*It seems,* that such an inquiry was competent only upon the defendant's cross-examination, and that the prosecution should have been limited to his answer thereon.

*It seems,* that it would have been competent for the prosecution to prove by the detective that the defendant did not speak to him at all about this fire and so show that his explanation given to the marshal was false, but that did not warrant evidence that he did speak about the other fire.

(10.) SAME—EVIDENCE AS TO OTHER CRIME.

Evidence that the defendant procured an assault to be made upon one who was his rival with the occupant of the dwelling was competent as tending to show defendant's close relation with and infatuation for her.

(11.) SAME.

Admission of testimony by the marshal as to the inquiry made of the defendant by the detective as to the other fire, did not constitute material error. It was competent to ask the defendant upon cross-examination as to his connection with the other fire.

APPEAL by the defendant, Joseph Klein, from a judgment of the County Court of Kings county, entered in the office of the clerk of said county on the 25th day of June, 1917, convicting him of the crime of arson in the second degree, and also from orders denying defendant's motion for a new trial and to set aside the verdict.

*Henry F. Cochrane,* for the appellant.

*Harry G. Anderson, Assistant District Attorney (Harry E. Lewis, District Attorney,* and *John E. Ruston, Assistant District Attorney,* with him on the brief), for the respondent.

MILLS, J.:

This is an appeal by the defendant from a judgment convicting him of the crime of arson in the second degree, rendered

upon the verdict of guilty at a Trial Term of the County Court of Kings county on June 25, 1917. The sentence of the court was imprisonment in Sing Sing Prison for an indeterminate period, the maximum to be twenty-five years and the minimum twelve years and six months.

The defendant was indicted jointly with other persons upon the charge of having willfully set fire and burned a dwelling house of Samuel and Abraham Siegel in the county of Kings, on February 29, 1916. The defendant Dora Schulster, the occupant of the premises where the fire was, had pleaded guilty to the indictment before this trial, but had not been sentenced; and two other defendants had pleaded guilty to another incendiary fire under another indictment for arson, and likewise had not been sentenced.

On July 19, 1917, a justice of this court granted and made a certificate of reasonable doubt admitting this appellant to bail in the sum of $10,000. The justice filed an opinion giving at some length the grounds of his such certificate.

As to certain general facts the evidence is undisputed and they may be briefly stated. In the early afternoon of February 29, 1916, a fire occurred in an apartment occupied by the said Dora Schulster and her family at 397 Sutter avenue in that part of Brooklyn known as Brownsville, and that is the fire charged in the indictment. The appellant lived and was engaged in a baking business in that neighborhood, and his business was extensive and prosperous. For some considerable time before the fire he had maintained intimate and illicit relations with that woman, her husband being absent from the city at work in Chicago.

The contention of the prosecution at the trial was that the fire was actually set by the defendant Berman, and that the appellant had suggested to Mrs. Schulster the setting of the fire and employed Berman to set it, Mrs. Schulster absenting herself at the time to attend a picture show with her children; and

that the object of the fire was that she might collect insurance money upon the furniture, which belonged to her husband and was insured. On the other hand, the claim at the trial on the part of the defendant was, in brief, that while he had had such relations with Mrs. Schulster, he did not suggest the setting of the fire or employ Berman to set it or have anything to do with it or know anything about it; and that Mrs. Schulster's motive in accusing him, as she did something like a year afterwards, of guilty participation in the matter, was to earn her own immunity from the public authorities after her guilt had been discovered, and also because of resentment at him for not coming to her defense.

A great amount of testimony was taken, as well as the summation by each counsel, so that a large record is presented here.

The appellant was evidently a man of substantial business and means and apparently without any previous objectionable record, other than his illicit relations with women. The motive so charged for such a man to perpetrate such an act does not appear to be strong, and, therefore, perhaps the case warrants especially careful examination.

The evidence for the prosecution consisted chiefly of the testimony of Mrs. Schulster. Indeed all the evidence directly connecting the appellant with the fire in question was given by her. The other evidence for the People consisted in some testimony given by her sister as to an alleged suggestion by the defendant of a fire at a prior place of residence by Mrs. Schulster, and testimony given by the city fire marshal of the proceedings at an official investigation held by him in February, 1917, about a year after the fire, at which he questioned all of the suspected parties, including the several defendants.

The learned counsel for the appellant contends that Mrs. Schulster was a confessed accomplice, and that she was not sufficiently corroborated to satisfy the requirements of section

399 of the Code of Criminal Procedure, in that the other evidence did not tend " to connect the defendant (this appellant) with the commission of the crime." I think, however, that such other evidence in the record, assuming it to be competent, was so sufficient. In view of the recent decision of the Court of Appeals in People v. Becker (215 N. Y. 126, 33 N. Y. Crim. 93), the such tendency of corroborating evidence need not be strong. Mrs. Smith, the sister of Mrs. Schulster, testified that while Mrs. Schulster was living at another place, some few months before the fire in question, she heard the appellant repeatedly advise Mrs. Schulster to have such a fire in her apartment and promise to provide for her a man to set it. Moreover it was proved that the appellant did attend to collecting the insurance check for Mrs. Schulster, and that he made some misrepresentations of facts of some supposed materiality when he was interrogated at the marshal's investigation. Also, according to the marshal's testimony, he then admitted that the day following the fire she told him, in effect, that it was incendiary. That fact, with his admitted subsequent conduct in cashing the check, and in saying what he claimed he did thereafter to the police officers, not revealing to them her such statement, was, I think, within the broad rule announced and applied in the Becker Case (*supra*), evidence so tending.

I conclude, therefore, that this contention of appellant's counsel is not well made.

Appellant's counsel claims also that certain substantial errors, to the manifest prejudice of the defendant, were committed by the trial court in the admission of evidence. After a careful review of the briefs and the record, and consideration of the matter, I am convinced that this contention is well founded in the following respects:

*First.* The admission, as a part of the People's case, of evidence as to statements taken by Fire Marshal Brophy, upon his investigation held at his office February 19 and 20, 1917,

was, I think, in substantial violation of the bar given by section 779 of the Greater New York charter.

Evidently in some way the marshal's suspicions had been aroused as to the nature of the fire in question, and also as to that of a certain other later fire in that neighborhood, although apparently there was at first no suspicion about this fire and the insurance had been adjusted and paid without question. The examination was a very protracted affair, lasting from six P. M. to eight A. M. the next morning. Some twelve to twenty witnesses were examined, being confronted with one another. A stenographer took down at least a part of the proceedings and an interpreter even was used for some of the witnesses. The witnesses, however, were not sworn, and they were not subpœnaed to attend, but I think it is only fair to consider that at least the suspected persons were brought there practically under arrest. This is quite clear as to the appellant, defendant. The marshal, in his testimony, admitted that much, namely, that he gave the defendant to understand that he had to go with him to his office; viz.: " Q. And you (meaning the marshal) told him (meaning the appellant) he would have to go to Fire Headquarters, didn't you? A. Well, I invited him there. I virtually impressed upon him that if he did not go, we would take him." Repeatedly in his testimony the marshal spoke of him as being then under arrest. Indeed the district attorney, in his summing up, said the same thing of them all at that time; and the charge did likewise. The defendant had no counsel present and apparently no suggestion was made to him by the officials that he should or could have one. Before his examination began at the office he was expressly warned by both the marshal and the district attorney that whatever he might say would be used in court against him.

Section 779 of the city charter authorizes such marshal to hold such an investigation, and to that end to have subpœnas out of the Supreme Court and thereby to compel the attendance

of persons, and also to administer oaths to witnesses. Near its close the section provides that "any testimony or evidence *taken as aforesaid* * * * shall in no manner be used in any criminal proceeding or action." (Laws of 1901, chap. 466, § 779. Since amd. by Laws of 1917, chap. 604.)

When the marshal's testimony as to that examination began, defendant's counsel objected "as incompetent, immaterial and irrelevant; prohibited by statutes." In reply the district attorney argued that the prohibition of the statute did not apply because the witnesses were not sworn. Thereupon the learned trial judge overruled the objection, defendant excepting. Later, upon inquiry of defendant's counsel, the court assured him that his objection applied to "the entire line of examination." The witness, the marshal, proceeded and in a narrative form stated the substance of the examination, not only that of defendant, but of others in his presence. The learned counsel for the respondent attempts here to justify such ruling upon the ground that the bar of the statute applies only where the examination was conducted in compliance "with the provisions and conditions thereof (meaning the section) in all respects." As authority he cites People v. Schneider (154 App. Div. 203), and claims that this court in that case held that the mere fact that such examination was not held under oath prevented that bar from applying. In that case it appeared that the defendant was arrested almost at the fire, and that very shortly thereafter the deputy fire marshal visited him at the station house, where he was held in custody, informed him of the marshal's official position and duty to investigate, and that whatever the defendant might say would be used against him, and then questioned him without administering any oath. The headnote declares, in effect, that this court held that the bar did not apply because the defendant was not put under oath, but I do not find that statement exactly made in the opinion. On the contrary, the view of the court is therein

thus summarized, viz.: " The restriction against using the testimony elicited   *   *   *   does not in any manner limit the fire marshal in testifying to a conversation held by him with a person who is merely in custody in connection with such fire, where the prisoner is not under oath, and his whole conversation is brought out in his own behalf." (154 App. Div. 210.) The situation there was very much the same as it is here in this record as to what passed between the marshal and defendant at the saloon when the marshal presented himself to the defendant before he took him to his office for the examination. It is to be noted that in that very conversation with the defendant the marshal called his contemplated inquiry at his office " an official investigation." I think that it is little less than farcical to call what followed at the office from six P. M. that evening to eight A. M. the next morning, with a dozen people interrogated by the marshal and even by the district attorney, anything short of the official investigation authorized and contemplated by the statute. I think, moreover, that the provision of the section giving the bar should be liberally construed. The legislative intent in its enactment doubtless was to promote entire freedom of such an examination in the public interest, so as to elicit the truth to aid in the detection of that crime so intrinsically difficult of detection. If the contention of the respondent's counsel here be entirely correct, the failure on the part of the marshal to observe the least requirement of the section, perhaps even to obtain subpoenas, would deprive a person examined of the benefit of the bar. The words " taken as aforesaid " should be given no such narrow and illiberal construction.

Moreover, I am not sure that, had I been a member of this court in that case, I would have concurred. As stated in the opinion (154 App. Div. 206), the marshal in that case, as a preliminary to his interrogation of the defendant, quoted to him the provisions of the city charter as to the marshal's duties,

including this very section 779. It may, therefore, have been a fair matter for consideration here whether or not, by such quoting, the marshal did not intend to give the defendant to understand that his interrogation was a part of the investigation provided for by that section, and that, therefore, his answers would come within the protection of the bar of the section. If the marshal did not so intend, why did he quote the section at all? At least the designed creation of such an impression in the mind of the defendant might have prevented his statements from being voluntary. It is well settled that statements so made to an official having a person in custody under promise that they shall not be used against him, cannot be so used. In the opinion this view of the matter was not considered.

*Second.* If the statements made at that official examination by others in the presence of appellant were competent evidence against him, so far as the bar of said statute is concerned, because people were not sworn, still it appears clear to me that most of such statements, so far as they were substantially damaging to him, were incompetent evidence as being immaterial, which was one of the grounds of the objection taken.

The rule as to such statements by others in a defendant's presence is well settled, namely, that they are competent evidence against him only when he admitted their correctness either expressly or by keeping silent when the circumstances were such that if he had been innocent or the particular statements untrue, he would naturally have spoken up and denied. After the marshal had, over defendant's repeated objection and exception, been permitted to practically complete his testimony as to those statements, the trial court laid down such rule and upon motion of the district attorney struck out so much of such testimony " as refers to the statements of (naming the other such persons) which were denied by the defendant." The court there correctly stated the rule, except that he appears to have decided as matter of law that the circumstances proven

were such that defendant's silence was to be taken as confession of guilt. That holding was, to that extent, plain error. At the most the circumstances testified to by the marshal were such as to leave it to the jury to decide whether or not defendant was thereby called upon to speak and deny or explain. (People v. Cassidy, 133 N. Y. 612.)

The trial court could not, as matter of law, properly instruct the jury that defendant's silence was a confession of guilt. I do not find that in the charge he gave the jury this rule in form. In reference to the application made by him of the rule during the marshal's testimony, several things may well be noted. In the first place, after having asserted the rule that accusations by others in defendant's presence, which defendant then and there denied, could not be proven against him, and having purported to strike out all such, he nevertheless, upon redirect examination of that witness, permitted him to repeat the gist of the accusations which Mrs. Schulster then made in defendant's presence, although the witness had previously testified that defendant then and there denied them all.

The only attempt made by respondent's counsel to justify the admission of that testimony upon redirect examination is that defendant's counsel upon his cross-examination of the witness had required him to testify anew to defendant's such denials. I do not think that he thereby opened the door at all to such a redirect examination or waived his objection to that line of testimony, which the trial court had assured him continued throughout the examination.

The most important thing in this connection is that, as I read and analyze the record, there was no substantial part of the accusations against defendant, made by the others in that examination, which the defendant did not then and there deny; and, moreover, there was no part of them as to which he remained silent. Indeed the district attorney in express terms asked the marshal to specify anything of the latter sort, and he

failed utterly to specify any such. The things in those accusations, which defendant did not then and there deny, were simply: (a) That he, for Mrs. Schulster, cashed the check which had been given by the insurance company for the loss; (b) that Comin did assault one Forman, but not at defendant's solicitation; and (c) that Mrs. Schulster did give defendant a ring. None of those things by itself was of any incriminating force. As to the naked cashing of the check, the court in effect so charged.

Although the substantial accusations of the others, being mainly made by Mrs. Schulster, had thus been stricken out, the learned district attorney expressly referred to them in his summing up as weighty evidence, and the learned trial court in effect did the same thing in his charge.

The marshal was the public officer charged by the city charter with the special duty of investigating suspicious fires, and it seems exceedingly improbable that the district attorney, when he began his examination of him as a witness, did not know, in substance, what his narrative would be. He should not have attempted to introduce in evidence the bulk of it, which plainly violated the rule which he later stated and invoked upon his own motion to strike out. Certainly, when the objection of immateriality was taken at the beginning of that examination, he should thereafter have so conducted the examination of that witness as to conform with that rule.

Indeed it seems to me that the circumstances proven were such as to fully justify defendant in keeping silent under the accusations of the others, if he did do so. He was, at its commencement, expressly told by both the marshal and the district attorney that whatever he might say would be used in court against him. With such a warning, he was entitled to remain mute. That warning was an encouragement to silence and not to speech.

I conclude, therefore, that it was most prejudicial error for

the trial court to admit the testimony of the marshal as to the greater part of the accusations made against appellant by Mrs. Schulster and others at the marshal's official examination, and that such error was not cured by the attempted striking out.

*Third.* Upon rebuttal the People were permitted by the testimony of Detective Drum to introduce evidence tending to connect the defendant with the commission of another crime.

The marshal, upon his direct examination above referred to, testified that he asked the appellant at the official examination what he had said to Detective Drum about a week before, such examination being held on February 20, 1917, and the fire in question having occurred on February 29, 1916; and that appellant, as part of his answer, said that about a week before he had told Detective Drum about the fire. Upon defendant's cross-examination he denied having made such statement to the marshal. Upon his re-cross-examination he was asked by the district attorney if he did not say various other things to that detective in reference to the Sieglar and Levine fire, which had occurred on December 19, 1916, and he denied having made any such statement. In rebuttal the People were permitted, over defendant's objection and exception, to prove by Drum that the appellant did say those things about that other fire, indicating a guilty knowledge of it, all over the objection and exception of defendant's counsel.

Respondent's counsel admits here that it was incompetent for the People to prove that defendant has been engaged in any other fire, but he attempts to justify the receipt of Drum's such testimony upon the authority of People v. Willett (213 N. Y. 368, 387, 32 N. Y. Crim. 421), in that the evidence tended to show that defendant had given a false explanation of a material fact appearing to be against him. In that case Willett, to explain his very large loan from the bank just before the nominating convention, said that he had paid $5,000 of it upon a certain note, and it was held proper for the People to prove by other

evidence than his cross-examination that such note was in fact paid by his brother with his own money. The difficulty here is that the alleged false explanation or statement was not at all as to the crime charged in the indictment or as to any fact which tended to show appellant guilty thereof, but was as to another alleged distinct crime committed ten months later. The situation here is as it would have been in that case if the People there had been permitted to prove that the defendant, with his alleged confederate, had ten months before or later bought or sold an entirely different nomination. It seems to me that such an inquiry would have been competent only upon appellant's cross-examination, and that the People should have been limited to his answer thereon.

The district attorney, upon the appellant's cross-examination, made strenuous effort to obtain from him some admission of complicity in such other fire, but failed utterly in such effort. By his such examination of Detective Drum he was permitted, in substance, to accomplish that as an item of main proof. I think that that was decided and substantial error. It is to be noted that the marshal testified that appellant at the investigation told him that he had told Drum about this fire, but upon being asked he gave in detail what appellant actually said and it appeared that he admitted merely telling Drum something about the later fire. Upon his direct examination appellant denied making such statement, as also he did upon his cross-examination, and again upon his re-cross-examination. It would no doubt have been competent for the People to prove by Drum that appellant did not speak to him at all about this fire and so show that his such explanation given to the marshal was false, but that did not warrant such evidence that he did speak about the other fire.

The counsel for the appellant claims that additional special error was committed by the trial court in receiving evidence of other criminal acts on the part of the defendant, namely, the

accusation by Comin that appellant procured him to assault one
Forman, who was his rival with Mrs. Schulster; and also in
receiving the marshal's testimony as to the inquiry made of de-
fendant by the detective as to the said other fire. I do not think
that in the reception of that evidence there was any special error
upon that ground. As to the former item of such proof I think
that it was competent as tending to show defendant's close re-
lation with and infatuation for Mrs. Schulster; and as to the
latter the inquiry made by the marshal was as to the Schulster
fire, *i. e.*, what he said to the detective about that, and the de-
fendant himself volunteered the reference to the other fire. It
was of course entirely competent to ask the defendant upon his
cross-examination as to his connection with the other fire.

Under the law of the charge it is manifest that there should
have been an acquittal by the verdict and indeed by direction
of the court. There was no sufficient evidence of defendant's
guilt, except the testimony of Mrs. Schulster to the effect that
he advised her to have the fire set and produced Berman to set
it, and that Berman came and was there the day of the fire.
Berman, as the People's witness, denied all that and the charge
so held. The same thing is true as to the alleged prior transac-
tion of appellant with Comin in the presence of Mrs. Schulster
and Mrs. Smith. Their testimony affirmed that transaction;
and Comin, as a witness for the People, denied it. The charge
explicitly declared that where a witness for the People was as
to a material fact contradicted by another witness for the People,
the jury could not find that fact proven by the testimony of. the
former witness, or at least could not believe that testimony of
that witness. Hence, under that charge the jury could not believe
that testimony of Mrs. Schulster or of Mrs. Smith. Therefore,
they should have rejected and disbelieved that testimony; and
in that event they had before them no evidence sufficient to war-
rant conviction and they should have acquitted.

No doubt that part of the charge, as well as the general

statement that a party is bound by his witness in that absolute sense, was error; but it was the law of the case and I suppose must govern here in determining the question raised by the motion for a new trial, whether or not the verdict was against the weight of the evidence. I deem it proper to call attention to this point, although it has not been urged here by the appellant's counsel.

I advise, therefore, that the judgment of the County Court of Kings county be reversed and a new trial ordered in that court.

JENKS, P. J., THOMAS, PUTNAM and KELLY, JJ., concurred.

Judgment of conviction of the County Court of Kings county reversed, and new trial ordered in that court.