THE PEOPLE OF THE STATE OF NEW YORK; Respondent, *v.* VICTOR ALES, Appellant.

Crimes — arson in first degree — evidence — sufficiency of evidence to warrant conviction — provision in New York city charter that evidence taken upon investigation into fires shall not be used in criminal action does not apply to admissions in informal conversation — testimony of assistant fire marshal as to conversation with defendant after fire, properly received.

1. The evidence upon trial of an indictment for arson in the first degree examined and held sufficient to warrant a verdict of conviction.

2. Section 779 of the charter of the city of New York (L. 1901, ch. 466), authorizing and empowering the fire commissioner or a chief fire marshal or deputy chief fire marshal to " investigate, examine and inquire into " fires, compel the attendance of any witness and administer an oath or affirmation and providing that false swearing shall be punishable as perjury but that testimony or evidence " taken as aforesaid   *   *   *   shall in no manner be used in any criminal proceeding or action," renders incompetent, in a subsequent criminal proceeding or action, only testimony or evidence taken upon an examination in which an unwilling witness may be compelled to testify under oath.   It does not apply to admissions made in an informal conversation between an assistant fire marshal and the defendant where there was no suggestion that he might be compelled to speak.

3. Testimony, therefore, of the assistant fire marshal as to a conversation between defendant and himself on the morning after a fire in defendant's shop in which defendant made admissions tending

to show that he desired to dispose of his business for a price less than the amount for which the shop and its contents had been insured, was properly received.

*People* v. *Ales*, 220 App. Div. 743, affirmed.

(Argued January 16, 1928; decided February 14, 1928.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered April 29, 1927, which affirmed a judgment rendered at a Trial Term for the county of Kings upon a verdict convicting the defendant of the crime of arson in the first degree.

*Benjamin Fagan* for appellant. Substantial error was committed by the trial justice in permitting over objection seasonably taken, the testimony of the assistant fire marshal. (*People* v. *Tinauer*, 196 App. Div. 896; *People* v. *Klein*, 185 App. Div. 86.)

*Charles J. Dodd, District Attorney (Henry J. Walsh* of counsel), for respondent. The testimony of the fire marshal was competent and admissible. (*People* v. *Schneider*, 154 App. Div. 203; *People* v. *Klein*, 185 App. Div. 86.)

LEHMAN, J. Between midnight and one o'clock in the morning of January 3, 1925, the Fire Department was called upon to extinguish a fire at 141 Ten Eyck street in the borough of Brooklyn. The building was a five-story brick store and tenement house. One hundred and two persons lived in the building. The defendant leased and operated a barber shop on the first floor. The fire was in the barber shop. The chairs and towels in the shop were soaked with gasoline. Apparently the fire had been started at several places in the shop. The fire marshal's office was informed of the condition surrounding the fire. Eugene J. Shields, assistant fire marshal of the city of New York, made an examination of the premises at quarter past two on the same morning. He concluded

that the fire in the barber shop was not due to an accidental cause but had an incendiary origin. Indeed that was quite apparent. At that time the defendant was not present. The assistant fire marshal left after he had examined the shop and its contents. He returned at about eight o'clock the same morning. He then questioned the defendant. The defendant stated that he knew nothing about the fire and had left the premises before ten o'clock the previous evening. After this conversation the assistant fire marshal ordered the defendant's arrest. Subsequently the defendant and one Frederick L. Dixon were indicted upon the charge of arson in the first degree.

There is no doubt that the fire was deliberately planned and set. Frederick L. Dixon as a witness for the People testified at the trial of the defendant that he alone had been present when the fire started and that he had lighted the fire, but that he was induced to act by the defendant's promise to pay two hundred dollars after the insurance on the shop was collected. This the defendant denied.

The shop was insured for the sum of one thousand dollars. If the business and the contents of the shop were worth less than that sum the defendant might derive profit from the fire. The defendant claims that they were worth more to him. Unless the defendant agreed to pay Dixon, it is hard to see how Dixon or any other person could profit from Dixon's crime. The defendant claims that Dixon's act was induced not by promise of reward but by a desire to injure the defendant. The jury has rejected the defendant's contentions. It has chosen to believe Dixon, and the defendant has been convicted of arson in the first degree. The evidence fully sustains the finding of the jury.

A significant part of the evidence against the defendant is the testimony of Eugene J. Shields, assistant fire marshal, as to the conversation between the defendant and himself

23

on the morning after the fire. According to that testimony the defendant then made admissions which tend to show that the defendant desired to dispose of the business for a price less than the amount for which the shop and its contents had been insured. The defendant maintains upon this appeal that testimony by a fire marshal of a conversation held while the marshal was conducting an investigation of the origin, details or management of a fire in the city of New York is incompetent under the provisions of section 779 of the Greater New York charter.

That section authorizes and empowers the fire commissioner himself or by a chief fire marshal or deputy chief fire marshal to " investigate, examine and inquire into " fires. Such investigation may be informal, like an investigation or inquiry by the police. An informal investigation conducted without power to compel attendance of witnesses might not result in the disclosure or discovery of all the circumstances which the investigating officer deems necessary or desirable. For that reason the officer " in and about " any examination, investigation or inquiry may obtain subpœnas and compel the attendance of any witness and the production of books or documents. Failure to obey a subpœna or refusal to answer a pertinent question may be punished by the Supreme Court as for a contempt of its order. The investigating officer in conducting an examination as aforesaid may administer an oath or affirmation, and false swearing shall be punishable as perjury. " Testimony or evidence taken as aforesaid shall be for the information and instruction of said fire commissioner * * * and shall in no manner be used in any criminal proceeding or action."

The intent of the Legislature in enacting that testimony or evidence " taken as aforesaid * * * shall in no manner be used in any criminal proceeding or action " seems to us quite clear. Where the investigating officer " in and about any examination, investigation or inquiry "

exercises the power to compel the giving of testimony and
the production of evidence and to administer an oath,
the analogy of such an inquiry to a judicial inquiry
becomes so close that the Legislature has seen fit to
safeguard the constitutional guaranty that " no person
shall be compelled in any criminal case to be a witness
against himself," by provision that testimony or evidence
so taken shall not be used in any criminal proceeding or
action. Similar provision has been made in many other
statutes. (See Canal Law, section 20; Debtor & Creditor
Law, section 16; Civil Practice Act, sections 791 and
1219; Justice Court Act, section 486; Penal Law, sections
713, 737, 1472, 1716, 1787, 1916, 2038, 2097.) The list
is by no means complete. In all these statutes the
purpose of the provision is clearly apparent. No less
clear is the intent and purpose in the statute now under
consideration. It does not provide, expressly or impliedly,
that no admissions made by any person to a fire marshal
during an investigation of a fire may be shown in any
criminal proceeding or action; it renders incompetent in
a subsequent criminal proceeding or action only " testi-
mony or evidence taken as aforesaid," that is, testimony
or evidence taken upon an examination in which an unwill-
ing witness may be compelled to testify under oath.

Here it appears that the defendant made the admissions
during an informal talk with the fire marshal. The
appearance of the defendant and the answers he gave
were voluntary. He spoke because he wished to speak,
without any suggestion that he might be compelled to
break his silence. What he said possessed no char-
acteristic of testimony or evidence, and the investigation
then being conducted by the fire marshal has no analogy
to a judicial inquiry. Evidence of what he said under
such circumstances is not rendered incompetent by the
statute. The purpose of the privilege against self-
incrimination has always been to prevent " the employ-
ment of legal process *to extract from the person's own lips*

an admission of his guilt which will thus take the place of other evidence." (Wigmore on Evidence [2d edition], section 2263.) In the absence of a clear expression of other legislative intent, the field of operation of a statute which safeguards the privilege against self-incrimination should not be extended beyond the historic limits fixed by the purpose and spirit of the privilege itself.

In *People* v. *Schneider* (154 App. Div. 203) it was held that an admission made to the fire marshal by an accused after his arrest might be given in evidence upon the trial of the accused. In *People* v. *Klein* (185 App. Div. 86) the court held that the People might not prove at a trial admissions made to a fire marshal upon a previous protracted hearing where "twelve to twenty witnesses were examined, being confronted with one another." Though no subpœnas were issued and no witnesses were sworn, the suspected persons were there brought to the hearing "practically under arrest." It was conducted formally, and a stenographer took down at least part of the proceedings. The inquiry was in many respects like a judicial inquiry, and by its form made effective the suggestion that the power of the State might be invoked by the fire marshal to compel an answer if an answer was not voluntarily given. Under such circumstances the answer of a witness may in effect be evidence or testimony given under compulsion, though no subpœna was issued and no witness was sworn. (See *U. S.* v. *Armour Co.*, 142 Fed. Rep. 808; *Atkinson* v. *State*, 128 N. E. Rep. 433.) Not so here, where the fire marshal had power to hold an investigation informally without resort to subpœna and without administering an oath, and the admission introduced in evidence at the trial was made by the defendant in an informal conversation without any suggestion that he might be compelled to speak.

The judgment should be affirmed.

Cardozo, Ch. J., Pound, Crane, Andrews, Kellogg and O'Brien, JJ., concur.

Judgment affirmed.