Scileppi, J.
In the latter part of July, 1963, 247 new General Electric refrigerators were delivered to a recently completed. New York City Housing Authority project in The Bronx. On August 1, 1963, 16 refrigerators were found missing and on August 26, another 10 could not be accounted for.
In December, 19.63, the appellant, a New York City police officer, was indicted with four other men on multiple counts including grand larceny in the first degree. The indictment was dismissed as to defendant Quatron and pleas of guilty to the misdemeanor of petit larceny were entered by defendants Baker and Nuro, who were the guards at the project when the refrigerators were first reported missing. Thereafter on November 18, 1964 the appellant and defendant Cuomo went on trial and were found guilty as charged. However, Justice Postel set aside the verdict as to Cuomo on the ground that the verdict was contrary to the law and the weight of the evidence, apparently because the prosecution had failed to establish the requisite corroboration as to Cuomo (Code Crim. Pro., § 399).
Franz Schmitt testified that he was appellant’s next-door neighbor and had known him for about three years. Sometime during the summer of 1963 appellant offered to sell him a refrigerator for $85, and told him that he could view the refrigerator on his (appellant’s) porch. When asked if the refrigerator was new or used Schmidt responded: “It was used. The tag was still on it ”. He told appellant that he did not need one, but that he knew a neighbor who might. Appellant asked him to tell the neighbor about it because he would give anybody a break.
Rudolph 'Schmidt testified that he was the son-in-law of Franz Schmitt and lived with him in the house adjacent to that of appellant. During the summer of 1963, after-a conversation with his father-in-law, he went to the porch of appel *559 lant’s house and saw a taped refrigerator which he identified as a General Electric, although admitting that he noticed no brand name or other mark indicating its make.
Both Cuomo and the appellant took the stand in their own behalf and related substantially the same story as they told Detective Duffy.
Jerry Cuomo, a cousin of defendant Cuomo, testified that during July and August he twice loaned to Cuomo and the appellant a green truck. However, he stated that the truck bore the name “ Jericho Roofing Corporation”.[1]
This is substantially all of the relevant testimony given at the trial.
Justice Postel as part of his charge to the jury stated: “ In order to convict the defendants * * * the jury must find beyond a reasonable doubt that the refrigerator seen on the porch by the son-in-law of the next door neighbor Schmidt was one of the refrigerators stolen from the [project]; and if there is any question in their minds whether it was so stolen from the [project] then the jury must necessarily acquit both defendants.”
At the trial Nuro testified that late in July, 1963 Quatron told him that he wanted to take two of the refrigerators that had recently arrived at the project. Nuro allowed him to do so receiving from Quatron $20 for each refrigerator, a sum he split with Baker, the other guard at the project. Quatron told him that he would return with a good customer for the refrigerators.
Nuro further testified that late one afternoon, the following week, Quatron returned with two men who were identified by Nuro as the appellant and Cuomo. Appellant said that he wanted refrigerators and, having been told by Nuro that he could take some, promised that he would return that night. Later that night, Quatron, Cuomo, appellant and two others returned in a green truck bearing the words “ Southern Boulevard Roofing ”, and took nine refrigerators, paying Nuro $180, a sum he split with Baker. Near the end of August, the appellant and Cuomo returned, took nine more refrigerators and gave Nuro another $180 which he again split with Baker.
*560 Baker testified substantially to the same effect.
Having sufficiently established a theft by the testimony of those who had participated in it, the prosecution next sought to supply the required corroboration of the accomplices’ testimony by calling the detective assigned to investigate the theft and two of the appellant’s next-door neighbors.
Detective Duffy testified that as a result of a conversation he had had with Nuro and Baker, his investigation led him to the Jericho Roofing Company. There he saw Cuomo and four green rack-type trucks. When questioned, Cuomo denied the thefts but stated that on one occasion he and the appellant had gone to the housing project in question to get scrap lumber needed for repairs on the appellant’s house and that the guards there had allowed them to take some of the lumber. Detective Duffy also spoke to the appellant on the same day. He also denied any participation in the theft and gave substantially the same story Cuomo had given about having obtained some lumber for repairs on his house.
The appellant argues that this portion of the court’s charge to the jury specifically limited the evidence possibly supplying corroboration to the testimony of the son-in-law Schmidt and, therefore, all other evidence which might be used in determining the sufficiency of the corroboration cannot be considered because the charge of the court, whether right or wrong, became the law of the case (People v. Roper, 259 N. Y. 170; People v. Klein, 185 App. Div. 86).
This position is untenable.
The only reasonable interpretation that the jurors could have possibly given to the relevant portion of the charge was that the testimony of the son-in-law was a critical element of corroboration. However, they were not limited to his testimony alone. The charge was that they must believe that the refrigerator seen on the porch was one of those that had been stolen. The son-in-law never identified the refrigerator he had seen as a stolen refrigerator. Therefore, necessarily the jury had to rely on the testimony of others to arrive at their determination.
In People v. Morhouse (21 N Y 2d 66, 74) we stated; “ As we indicated in People v. Fiore (12 N Y 2d 188, 201), the corroboration requirement of section 399 of the Code of Criminal *561 Procedure is fully met when there is some nonaccomplice evidence ‘ fairly tending to connect the defendant with the commission of the crime ’ (quoting from People v. Elliott, 106 N. Y. 288, 292). The corroboration need not, as must circumstantial evidence, lead exclusively to the inference of the defendant’s guilt. As this court has noted, even ‘ Matters in themselves of seeming indifference * * * may so harmonize with the accomplice’s narrative as to have a tendency to furnish the necessary connection between the defendant and the crime. ’ (People v. Dixon, 231 N. Y. 111, 116-117; see, also, People v. Crum, 272 N. Y. 348, 353-354; People v. Malizia, 4 N Y 2d 22, 27; People v. Reddy, 261 N. Y. 479, 484.) ”
The nonaccomplice testimony in the instant case (1) placed the appellant at the scene of the crime at approximately the time the refrigerators were first reported missing; (2) in a vehicle similar to the one described by the accomplices and (3) that the appellant was in possession of a refrigerator similar to those that had been taken from the project.
It is our opinion that this evidence sufficiently tended to connect the appellant with the commission of the crime so as to satisfy the requirements of section 399 of the Code of Criminal Procedure.
As a second argument the appellant, relying on Garrity v. New Jersey (385 U. S. 493), takes the position that the prosecutor’s use of appellant’s Grand Jury testimony violated defendant’s rights under the Fifth Amendment.
Appellant testified before the Grand Jury under a waiver of immunity. The appellant argues that as a police officer he was required to do so or automatically lose his position (N. Y. Const., art. I, § 6; New York City Charter, § 1123) and, therefore, his testimony having been involuntarily given it was reversible error to permit the prosecutor to use it at the trial (Garrity v. New Jersey, supra).[2]
*562 The appellant’s trial terminated before the Supreme Court’s decision in Garrity so that if we were to determine that the facts in the instant case fall within the rule enunciated in Garrity, we would necessarily have to reach the question of retroactivity. However, the fact that the Grand Jury testimony was used solely for purposes of impeachment, coupled with the appellant’s having explained away the inconsistencies in his testimony, leads to our conclusion that any error which might have resulted should be characterized as harmless (Code Crim. Pro., § 542), and, therefore, renders it unnecessary for us to reach the question of retroactivity (People v. Breslin and Brennan, 21 N Y 2d 712).
Accordingly, the judgment appealed from should be affirmed.
Chief Judge Fuld and Judges Burke, Bergan, Keating, Breitel and Jasen concur.
Judgment affirmed.

. Earlier Nuro had testified that the truck which took away the stolen refrigerators hore the name “ Southern Boulevard Roofing

. It should be noted that unlike Garrity and the eases following it the appellant was not expressly given the “ Hobson’s Choice ” of either signing the waiver and testifying or suffer the consequence of immediate discharge. However, having assumed that even if Garrity is applicable the error was harmless, we do not reach the question of whether or not the mere existence of the relevant provisions granting the power to discharge were sufficiently coercive so as to render the appellant’s statement involuntary.