OPINION OF THE COURT
Duncan S. McNab, J.
The defendants herein are two patrolmen presently under suspension from the Town of Greenburgh police force. Under the above-noted indictment, they have been charged, acting in concert and while off duty, with, inter alla, burglarizing a Grand Union Supermarket and stealing some $5,000 worth of merchandise therefrom. Separate Huntley hearings were held for each defendant. This opinion, in large part, treats a novel issue that arose common to both defendants, namely, were various statements made by these police officer defendants to their superior officers rendered involuntary, in the absence of any express threats oí dismissal from the force or other job-related sanctions, by the mere assumption that the defendants either knew, or should have known, based on their *997 familiarity with the Town of Greenburgh Police Department regulations, that they could face possible removal from the force if they refused to waive their Miranda warnings and remain silent.[1]
To this court’s knowledge, the exact question presented here has never been decided in any reported case in New York State. However, the origins of the issue can be traced back to the case of Garrity v New Jersey (385 US 493), wherein a divided United States Supreme Court held, by a 5-4 vote, that when a policeman defendant was expressly warned, prior to being questioned before a Grand Jury impaneled to investigate alleged ticket fixing, that if he refused to answer questions he would be subject to removal from office, that the statement subsequently given by the defendant was rendered involuntary and inadmissible for purposes of State prosecution. Some two years later, in People v Leo (23 NY2d 556), our State Court of Appeals, confronted with a Gamiy-related question, chose not to reach the very issue faced in the instant case. There, appellant Leo testified before a Grand Jury under a waiver of immunity, and subsequently argued under Garrity that his testimony had been given involuntarily, since, as a police officer, he was in effect required to testify in order not to lose his job. However, in the course of unanimously affirming Leo’s conviction, the Court of Appeals by way of footnote pointed out that they had not reached “the question of whether or not the mere existence of the relevant provisions granting the power to discharge were sufficiently coercive so as to render the appellant’s statement involuntary”, since Leo was not expressly given the “Hobson’s Choice” (i.e., of either waiving his rights, or facing immediate discharge if he did not). (See People v Leo, supra, p 561, n 2; emphasis supplied.) Now, some 12 years later the codefendants in the instant case make essentially the same argument left open in Leo, *998 namely, that various statements they gave to their superior officers were rendered involuntary under those sections of the rules and regulations of the Town of Green-burgh Police Department which subject an officer to possible sanctions for failure to respond to a command from a superior officer.[2]
Patrolman Lannon would seek to apply Garrity (supra) to the interview and taped conversation he gave to Captain Hahn in Chief Singer’s office at approximately 8:30 a.m. on August 28, 1980; Patrolman Sanseverino would similarly apply it both to the taped conversation he had with Lieutenant Boyle commencing at 6:17 a.m. that day and later with respect to two separate statements he made in the chief’s office, first orally to the chief alone at approximately 2:00 p.m. on March 28, 1980, and a few moments later on tape in the presence of the chief and other officers. Both would seek inferentially to apply Garrity a step further to the respective statements they made in response to questioning by a superior officer on the scene when initially apprehended. However, there being no State cases subsequent to Leo (supra) which offer any help in resolving the precise issue here, this court would look to the Federal cases subsequent to Garrity for guidance. It is clear that the United States Supreme Court has drawn a firm line between an express warning, or demand, to waive one’s rights, on the one hand, and that merely implied from an existing provision on the other. For that reason, the joint motions of the codefendants to suppress their statements herein, under the holding of United States v Garrity, must be denied.
In Gardner v Broderick (392 US 273), appellant, a police officer, was subpoenaed before a Grand Jury. He was advised of his Fifth Amendment privilege, but was asked *999 to sign a waiver of immunity form after being told he would be fired if he did not sign. He refused and, following an administrative hearing, was in fact discharged solely for that refusal pursuant to section 1123 of the New York City Charter. The Supreme Court found this charter provision to have run afoul of petitioner’s Fifth Amendment rights and promptly reversed a decision by the New York Court of Appeals which had denied his petition for reinstatement.
However, in Baxter v Palmigiano (425 US 308), the Supreme Court took an altogether different view of certain Rhode Island prison regulations pertaining to the procedures to be employed at a prison disciplinary hearing. There, respondent Palmigiano, upon being charged with inciting a prison disturbance, was summoned before the prison authorities and told he might be prosecuted for a violation of State law, that he should consult an attorney, and that he had a right to remain silent at the hearing but that his silence would be held against him. Respondent stayed silent at the disciplinary hearing and was placed in “punitive segregation” for 30 days.
In the course of sustaining the determination at the disciplinary hearing, the high court took the opportunity to distinguish Garrity (385 US 493, supra) holding that “[n]either has Rhode Island insisted or asked that Palmigiano waive his Fifth Amendment privilege. He was notified that he was privileged to remain silent if he chose.” (See Baxter v Palmigiano, supra, at p 317; emphasis added; see Diebold v Civil Serv. Comm, of St. Louis County, 611 F2d 697; Pinkney v District of Columbia, 439 F Supp 519 [Sirica, J.], also distinguishing Garrity for the absence of any direct or express compulsion to testify based on a threat of dismissal from the job.)
This is precisely the situation in the instant case. Neither of the codefendants were ever ordered to talk, or directed to waive their rights, nor were either of them warned or if any way reminded of any possible job-related repercussions a refusal to talk could have. Rather, both defendants had their rights repeated in each instance in question and each affirmatively stated an understanding of the rights and demonstrated a willingness to talk. *1000 Thus, this court feels that the distinctions drawn in Baxter, Diebold and Pinkney (supra) would also control here, and therefore, defendants’ motions must be denied, both as to any and all statements given in the actual interview situations noted above, and also insofar as to all other statements made on March 28 while in custody and in response to questions propounded by a superior officer.
Additionally, as a threshold matter, this court has a serious question as to whether Garrity (supra) and its progeny were ever intended to go beyond the actual formal appearance (or interview) situation to the sort of less structured on-the-scene questioning such as was conducted here, of both defendants, when they were literally “caught in the act” at the Grand Union Supermarket early in the morning of March 28, 1980.

. The court had preliminarily granted defendant Lannon’s motion to suppress the taped statement given to Captain Hahn under Garrity v New Jersey (385 US 493) without the benefit of argument from either side as to the application, if any, of Garrity to the instant case. However, having permitted the People to reargue, and having had a greater opportunity to do additional independent research of its own, the court here is retracting its preliminary ruling under Garrity. Defendant Sanseverino subsequently joined codefendant Lannon in arguing the Garrity issue.

 . Under the section entitled “Rules of Conduct”, rules 9.1.0 and 9.1.3 state that, “A member of the Department shall not violate, either by commission or omission, any of the following acts *** Disobedience of an order.” Additionally, rule 3.5.2 provides that a “patrolman shall be accountable to his superior officer, promptly obeying all legitimate orders.” (Emphasis added.)
Insofar as the latter rule is concerned, it strikes this court that ordering a subordinate to waive his Fifth Amendment rights would not be a legal or legitimate order. Therefore, had either of these defendants arguendo been so ordered, they may not have had to obey by virtue of the language employed in the department’s own regulations.